**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

**ZACHARY STUBING,**
*individually and on behalf of all*
*others similarly situated,*                                    **CLASS ACTION**

      Plaintiff,                                                  **JURY TRIAL DEMANDED**

**v.**

**STOCKX, LLC,**

      Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Zachary Stubing ("Plaintiff") brings this class action against StockX LLC ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, et seq. (the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2.      To promote its goods, services, and/or properties, Defendant engages in unsolicited calls and continues to solicit consumers after they have opted out of Defendant's solicitations. Defendant also engages in telemarketing without the required policies and procedures, and training of its personnel engaged in telemarketing. Further, to promote its goods, services, and/or properties, Defendant

1

engages in unsolicited text message calls to consumers that have registered their telephone numbers on the National Do Not Call Registry.

3.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the intrusion upon seclusion, invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and members of the Classes.  Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Classes, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

4.      This Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA") and supplemental jurisdiction over the FTSA claims.

5.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant directs, markets, and provides its business activities to this District, and because Defendant's unauthorized marketing scheme was directed by Defendant to consumers from this District including Plaintiff who has a telephone number with a Florida area code (239).

## PARTIES

6.      Plaintiff is a natural person entitled to bring this action under the TCPA, and a citizen and resident of Florida.

7.      Defendant is a Michigan company with its headquarters located in Detroit, Michigan.

## FACTS

8.      On or about November 20, 2025, Plaintiff received an unsolicited call and subsequently requested to opt-out of Defendant's solicitations by replying with a stop instruction as reflected by the following screenshot:



     9.     Defendant ignored Plaintiff's request and continued soliciting Plaintiff, as demonstrated by the following screenshots:





10.     Defendant sent Plaintiff more than one solicitation after Plaintiff's initial November 20, 2025 opt-out request.

11.     Defendant sent Plaintiff text messages on at least: November 29, 2025; November 30, 2025; December 1, 2025, December 13, 2025; January 14, 2026; January 28, 2026; February 6, 2026.

12.     As demonstrated by the above screenshots, the purpose of Defendant's solicitations was to solicit the sale of consumer goods, services, and/or properties.

13.     Plaintiff reasonably revoked any consent to receive text messages from Defendant, which Defendant could claim to have. Notwithstanding, Defendant continued to send text messages to Plaintiff.

14.     Plaintiff never opted back in to receive text messages from Defendant after his first "stop" request on November 20, 2025.

15.     As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's solicitations by telling Defendant not to contact him anymore, but Defendant continued to initiate solicitations to Plaintiff.

16.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive calls from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

17.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

18.     Defendant's refusal to honor Plaintiff's opt-out requests demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

19.     Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative solicitations it sent to Plaintiff as reflected by the fact that Plaintiff made at least one opt-out request and that request was never processed; it was ignored by Defendant and its employees and Defendant continued to initiate solicitations.

20.     Defendant sent at least two solicitations after Plaintiff's first opt-out request.

21.     Plaintiff is the regular user of the telephone number that received the above solicitations.

22.     Plaintiff registered his cellular telephone number on the National Do-Not-Call Registry on or about December 16, 2025.

23.     Plaintiff utilizes the cellular telephone that received Defendant's solicitations for personal purposes and the number is Plaintiff's residential telephone line.

24.     Upon information and belief, Defendant has access to outbound transmission reports for all calls placed advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each call sent to Plaintiff and the members of the Classes. Defendant also has access to call logs showing Plaintiff's and the Class members' inbound opt-out requests.

25.     Defendant's solicitations caused Plaintiff and the Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

26.     To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human

involvement. The Platform automatically sent text messages to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the texts were initiated utilizing the Platform.

27.     Defendant's use of a generic text messages (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers. Moreover, the use of Plaintiff's first name in some of the messages does not render them any less generic as automated text messaging platforms like Defendant's Platform have the ability to automatically pull names from a list of target recipients and include them in the content of a form text message that contains a blank field for the recipient's name.

28.     The Platform has the capacity to select and dial numbers automatically from a list of numbers.

29.     The Platform has the capacity to schedule the time and date for future transmission of text messages.

30.      Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiffs and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

31.     Defendant would be able to conduct its business operations without sending automated text messages to consumers.

32.     Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

33.     Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

34.     Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

35.     The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

36.     Compliance with the FTSA will not result in Defendant having to cease its business operations.

37.     Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

38.     Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

39.     Defendant sent the same or similar text messages to Plaintiff and each putative class member in that the content of the messages consisted of advertising the availability of Defendant's eye exam appointments.

40.     Defendant's unwanted and unsolicited text messages caused Plaintiff and the Class Members actual harm, including invasion of privacy, intrusion upon seclusion, and intrusion into the peace and quiet in a realm that is private and personal to Plaintiff and the Class members.

## CLASS ALLEGATIONS

### PROPOSED CLASS

41.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

42.     Plaintiff brings this case on behalf of the classes defined as follows (collectively, the "Classes"):

**IDNC Class** - **all persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding Defendant's goods or services, to said person's residential cellular telephone number, *after* communicating to Defendant that they did not wish to receive text messages by replying with a "stop" or similar opt-out instruction.**

**DNC Class**: **All persons in the United States who, within the four years prior to the filing of this action through the date of class certification, (1) were sent more than one text message within any 12-month period; (2) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (3) regarding Defendant's goods or services; (4) to said person's residential cellular telephone number; (5) after making a request to Defendant to not receive further text messages by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).**

**FTSA "STOP" Class**: **All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, regarding Defendant's goods or services; more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

**FTSA Autodialer Class**: **All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, sent utilizing the Platform, regarding Defendant's goods or services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.**

43.    Plaintiff reserves the right to modify the definition of the Classes as warranted as facts are learned in further investigation and discovery.

44.    Defendant and its employees or agents are excluded from the Classes.

**NUMEROSITY**

45.    Plaintiff does not know the exact number of members of the Classes but is informed and believes that there are at least 50 individuals that fall within each class definition given Defendant's use

9

of automated solicitations to solicit consumers and refusal to honor stop requests. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

46.     The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery. Identification of the members of the Classes is a matter capable of ministerial determination from Defendant's call records.

COMMON QUESTIONS OF LAW AND FACT

47.     There are numerous questions of law and fact common to members of the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the members of the Class are:

a)  Whether Defendant violated 47 C.F.R. § 64.1200(d);

b)  Whether Defendant's conduct was knowing and willful;

c)  Whether Defendant adhered to requests by class members to stop sending text messages to their telephone numbers;

d)  Whether Defendant keeps records of text recipients who revoked consent to receive texts.

e)  Whether Defendant has any written policies for maintaining an internal do not call list.

f)  Whether Defendant violated the privacy rights of Plaintiff and members of the class;

g)  Whether Defendant is liable for damages, and the amount of such damages; and

h)  Whether Defendant should be enjoined from such conduct in the future.

48.     The common questions in this case are capable of having common answers, and Plaintiff and the members of the Classes will have identical claims capable of being efficiently adjudicated and administered in this case.

10

**TYPICALITY**

49.     Plaintiff's claims are typical of the claims of the members of the Classes, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

50.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

52.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the IDNC Class)**

53.    Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 52 as if fully set forth herein.

54.    In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed ten (10) business days from the receipt of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request. A person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) or any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward

the consumer's request not to be called to a party other than the person
or entity on whose behalf a call is made or an affiliated entity.

55.     Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable
to any person or entity making telephone solicitations or telemarketing calls to wireless telephone
numbers.

56.     Plaintiff and the IDNC Class Members are residential telephone subscribers who
received more than one call made for purposes of telemarketing or solicitation purposes from
Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated
by its failure to honor opt-out requests.

57.     Plaintiff and the IDNC Class members made requests to Defendant not to receive
solicitations from Defendant.

58.     Plaintiff and the IDNC Class Members revoked any consent they may have provided
Defendant by responding with "stop" or similar opt-out instructions.

59.     Defendant continued to call Plaintiff and the IDNC Class Members to harass them into
making purchases from Defendant.

60.     Defendant failed to honor Plaintiff's and the IDNC Class members' opt-out requests.

61.     Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to
implement a written policy for maintaining a do-not-call list and to train its personnel engaged in
telemarketing on the existence and use of the do-not-call-list.

62.     Plaintiff and the IDNC Class members are informed and believe that Defendant has not
instituted procedures for maintaining a list of persons who request not to receive telemarketing
solicitations.

63.     Plaintiff and the IDNC Class members are informed and believe that Defendant does
not have a written policy, available upon demand, for maintaining a do-not-call list.

13

64.     Plaintiff and the IDNC Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

65.     The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

66.     Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

67.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the IDNC Class members are entitled to an award of $500.00 in statutory damages for each and every negligent violation.

68.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the IDNC Class members are entitled to an award of $1,500.00 in statutory damages for each and every knowing or willful violation.

## COUNT II
## VIOLATIONS OF 47 U.S.C. § 227(c) AND 64.1200(c)
### (On Behalf of Plaintiff and the DNC Class)

69.     Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 52 as if fully set forth herein.

70.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

71.     Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

72.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

73.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

74.     Plaintiff and the DNC Class members made requests to Defendant not to receive solicitations from Defendant.

75.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one telephone solicitation in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

76.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the DNC Class members are entitled to an award of $500.00 in statutory damages for each and every negligent violation.

77.     Pursuant to section 227(c)(5) of the TCPA, Plaintiff and the DNC Class members are entitled to an award of $1,500.00 in statutory damages for each and every knowing or willful violation.

## COUNT III
## <u>VIOLATION OF FLA. STAT. § 501.059(5)</u>
### (On Behalf of FTSA "STOP" Class)

78.     Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 52 as if fully set forth herein.

79.     In pertinent part, the FTSA provides:

> A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission:
>
> (a)   Made by or on behalf of the seller whose goods or services are being offered; or
>
> (b)   Made on behalf of a charitable organization for which a charitable contribution is being solicited.

Fla. Stat. § 501.059(5).

80.     "'Telephone solicitor' means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." Fla. Stat. § 501.059(1)(i).

81.     Defendant is a telephone solicitor as defined under the FTSA.

82.     Plaintiff and the Class Members are consumers who received one or more text messages regarding Defendant's goods and services after they communicated to Defendant that they did not wish to receive Defendant's text messages.

83.     Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

16

84.    Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

85.    Defendant failed to honor Plaintiff and the Class members' opt-out requests.

86.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. Id.

87.    Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT IV**
**VIOLATION OF FLA. STAT. § 501.059(8)(a)**
**(On Behalf of FTSA Autodialer Class)**

88.    Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 52 as if fully set forth herein.

89.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party."  Fla. Stat. § 501.059(8)(a).

90.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."  Fla. Stat. § 501.059(1)(i).

91.     Plaintiff and the Class members revoked any consent they may have provided Defendant by responding with a "stop" or similar opt-out instruction.

92.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls (texts) to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

93.     Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

94.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.  Plaintiff and the Class members are also entitled to an injunction against future calls. Id.

95.     Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)  An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b)  An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA and FTSA;

c)  An order declaring that Defendant's actions, as set out above, violate the TCPA and FTSA;

d) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list;

e) An injunction requiring Defendant to comply with 47 C.F.R. 64.1200(c); and

f) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the calls as alleged herein.

Dated: February 10, 2026

Respectfully submitted,

By: */s/ Manuel Hiraldo*
**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
101 NE 3rd Avenue, Suite 1500
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
**LEAD COUNSEL for Plaintiff**

**EISENBAND LAW P.A.**
By: */s/ Michael Eisenband*
Michael Eisenband
Florida Bar No. 94235
515 E. Las Olas Boulevard, Suite 1301
Ft. Lauderdale, Florida 33301
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.732.2792
Attorney for Plaintiff
*COUNSEL FOR PLAINTIFF*